JOHN BRUCE
exhibited his bill in chancery against John Wooley, heir at law to John Wooley, deceased, for relief against the elder legal grant, which had been obtained by Wooley for the land claimed by Bruce in his bill. Bruce claims under a certificate for settlement and pre-emption, granted to Thomas Petit the 15th day of October 1779, which being assigned to Bruce, he, on the 9th day of November in the same year, entered it with the surveyor as follows: “John Bruce, assignee of Thomas Petit, enters 400 acres by virtue of a certificate, on Paint Lick creek, at the head of a branch that runs into the south fork of said creek, including the spring called the Sinking spring.’’
On the 26th of April 1780, he entered his pre-éteption, to “adjoin his settlement on the west.”
Wooley claims under a certificate granted to Peter Wooley, on the 21st of December 1779, for a settlement and pre-emption “ lying on the dividing ridge of Paint Lick and Dick’s river, by improving the same and raising a crop of corn in the country in the year 1776.” The same is entered with the surveyor the 9th of February 17b0, “lying on the dividing ridge of Dick’s river and Paint Lick.” His pre-emption entry Is the 31st of May 1780, “ adjoining the south and louth east side of his settlement,” and has the elder patent.
cy a?th^timé it was made & toriety of ©bjeéis at that An entry tmift be tefted the notoriety of
rule s. After-acquired notoriety Accord vol. i, j>.631, Entries,
AMrm'ative teftimony oi no. toriety may be countervailed by negative e-vidente — acc. vul. 1, in-Jex, title Noto-ri«yy .
The court below supported Bruce’s claim, and decreed tile land so far as be had surveyed conformably to his entry ; from which decree Wooley appealed tc this court. .
The court below assumed as thfe basis of its opinion the notoriety of the Sinking spring called for in the ap-pellee’s entry, and considered the calls to lie on Paint Tick creek, at the head of a branch' that runs into the south fork of said creek, as good descriptive calls.
a subsequent locator, by using reasonable diligence find them, the* entry rhust be taken The entry of Bruce must rest upon its sufficiency at the time it was made, and the then notoriety of the objects called for. If they were then insufficient to enable to as insufficient ; no after-acquired notoriety can aid it. It must possess the intrinsic qualities of a good entry qt the time it is made, and not rely upon mere contingencies which may or may not happen.
!’} a hide attention to dates, we easily perceive the court below were mistaken upon this principle, and have given the objects called for in the entry the full benefit of their after-acquired notoriety, in the extent they Would have done had they possessed it at the time ttie éntry Was made.
The descriptive calls in this entry give a very wide and extended range in which you are to search for what was intended fay the locator as his locative call: from their description they are totally insufficient (without the aid of great notoriety of the spring) to enable a subsequent locator to’ find the spot intended. The court ought not therefore to have supported the entry, unless the spring had, in 1779, been generally known and called by the name of the Sinking spring by those who were acquainted in that quarter of the country at that period — Speed vs. Wilson, Pr. Dec. 93-5, and Craig vs. Baker, Hard. 287.
The appellee has not proven that the spring, in 1779 anq 37 gn was generally known bv the name of the . , ? , J . A . , - . ,. Sinking spring, by those acquainted in that section ot the country, except by the testimony of Benjamin Pe-tjt wych appears to be little aided by that of his wife : , . • r r . r but on the contrary it appears from the testimony of se-ven or eight witnesses, who were, in the years 1775 and 1780, acquainted in the neighborhood, that, the spring *107 was not generally known as the Sinking spring, and that they never heard of it until some time after the year ⅛0, though they possessed a pretty general knowledge in that neighborhood. It likewise appears from proof in the cause, there are other springs contiguous to what is now called the Sinking spring, that would equally answer the appellee’s entry, with the one where he has surveyed. Andrew Kennedy states there is one on what is called M’Kinney’s fork, a water of Paint Lick, and John Adams proves there is a sinking spring about a mile or a mile and a half from the one in contest, on what is called Gordon’s fork of Paint Lick.
Specialty and notoriety efTen-tiais to a valid location.
We are therefore of an opinion the appellee’s entry wants two essential requisites to make it a good, ons-special description and notoriety, ’
Judgment reversed, &c.